NOBLE BROTHERS *et al.*, plaintiff in error, *vs.* THE STATE OF ALABAMA, defendant in error.

When a bill was filed praying for an injunction to restrain the sale of that portion of the Alabama and Chattanooga Railroad situate in this State, which was advertised for sale in satisfaction of the debts of sundry judgment creditors, alleging that the company was insolvent and that the sale of the road in detached portions thereof would work irremediable injury to the complainant and other creditors of the Company, the road extending from Meridian, Mississippi, to Chattanooga, Tennessee, being one continuous line of railroad, with a prayer, that the entire road might be sold, as a whole, for the benefit of the creditors of the insolvent Company :

*Held*, That under the allegations in the complainant's bill, the injunction was properly granted to prevent a multiplicity of suits, as well as to prevent irreparable injury and damage to the creditors of the insolvent Company.

(The Court was asked, as this was a cause of great public interest, etc., to deliver its opinion before regular opinion day, but would not do so. R.)

Equity. Comity. Liens. Before Judge PARROTT. Chambers. Bartow County. September, 1871.

The State of Alabama, invoking " that comity which she extends to her sister States," filed her bill against Noble Brothers, The Alabama and Chattanooga Railroad Company and one hundred and thirty other defendants, in which were the following averments set forth *in extenso*, with proper exhibits of the conveyances and statutes therein alluded to :
Her General Assembly passed " An Act to establish a system of Internal Improvements in the State of Alabama, which was approved the 19th of February, 1867, and an amendment of said Act, which was approved on the 22d of Sep-

tember, 1868, and embraced the conditions on which Alabama would aid in constructing railroads therein.

The Wills Valley Railroad Company, and the Northeast and Southwest Alabama Railroad Company were corporations in said State many years prior to 1868.

On the 6th of October, 1868, an Act was approved by which said two corporations were authorized to consolidate under the name of the Alabama and Chattanooga Railroad Company. This Act extended to this consolidated company the benefits of said former Acts, *i. e.*, State indorsement of its bonds. Said companies, under a contract and said last Act consolidated and amalgamated.

The General Assembly passed another Act, entitled " An Act relating to the Wills Valley Railroad Company, and the Northeast and Southwest Alabama Railroad Company, which was approved on the 17th of November, 1868, under which the Wills Valley Railroad Company was authorized to purchase, at a sale of the Northeast and Southwest Alabama Railroad Company, under a mortgage of said railroad to said State, all its property, real and personal, rights, franchises, fixtures, privileges and easements. On said last day the Wills Valley Railroad Company made said purchase, changed its name and organized under the name of the Alabama and Chattanooga Railroad Company.

This consolidated company issued four thousand seven hundred and twenty of its coupon bonds for $1,000 00 each, dated the 1st of January, 1869, and due the 1st of January, 1889. Before issuing these bonds this company, on the 19th of December, 1868, made a trust deed and mortgage to secure Alabama upon her indorsement of these bonds. This paper was duly recorded in Mississippi, Tennessee, Alabama and Georgia, in each county through which said railroad runs. The Governor of Alabama indorsed these bonds and delivered them to the company.

On the 11th of February, 1870, another Act was approved to loan her credit to said company to expedite the construc-

tion of its road in Alabama, by which her Governor was to issue eight per cent. bonds of the State of Alabama, to said company on certain conditions, the principal of which was that the company should deposit an equal amount of its first mortgage eight *per cent.* bonds, to be secured by a first mortgage on all its land granted by the United States and all its other property in said four States, and its directors, stockholders, officers and incorporators would be also personally bound for any loss incurred by Alabama should they knowingly violate or permit the violation of the provisions of this last Act. Under this Act, Alabama delivered to said company $2,000,000 of such bonds, took such mortgage and had it also recorded throughout the whole length of said road in said four States as aforesaid. Thus it acquired a prior lien and a lien of higher dignity than any other on all of said property in said four States.

The Wills Valley Railroad Company was chartered many years ago by Georgia and its merger into the Alabama and Chattanooga Railroad Company, and this asserted priority of lien of Alabama was recognized by Georgia in an Act of her General Assembly, entitled " An Act to extend the aid of the State of Georgia to the Alabama and Chattanooga Railroad Company," approved the 20th of March, 1869.

After obtaining said indorsement and said bond, the Alabama and Chattanooga Railroad Company flagrantly violated its said contracts with Alabama; its corporate action has been irregular and usually informal; its directors do not reside in either of said four States; no proper publicity has been given of its elections or meetings; the public only know Daniel L. Stanton and John C. Stanton in its management, the former as President, and the other as general Superintendent. The money raised from the sale of said bonds has been fraudulently misapplied, and used in purchasing property for the private use of said Stantons and their associates, and said money has been extravagantly, recklessly and illegally diverted from its proper object in a variety of other

ways.  With part of this money was bought property which the corporation could not legally hold, and the title was taken in the name of individual members.  The company has made a floating debt exceeding, by millions, what the building and equipment of the road should have cost.  The company improperly and illegally secured the indorsement of Alabama on $500,000 00 of its bonds, in excess of the amount provided for by law, and appropriated these bonds, or their proceeds, in a way unknown to the State of Alabama. It failed to pay the interest on the bonds indorsed and loaned to it by the State, and thus the State was compelled to pay the interest on $200,000 00 of its bonds, besides $168,088 of interest on the State's bonds due the 1st of January, 1871, $194,189 00 of interest due on the 1st of July, 1871, and the State has become bound for all the accruing interest and the principal of said bonds.  The company is insolvent, has had to stop its cars because it cannot pay its employees and creditors, and the Superintendent is gone to parts unknown; and he and the President both are non-residents of Alabama. The property of the company in said four States, is in the hands of subordinates, many of whom are irresponsible. Said property has been wasted, abused, eloigned and seized by attachments, and by every other legal process known to the laws of said States.  These causes have produced immense loss and will cause more unless the Court of equity intervenes.  The Governor of Alabama, as authorized by law, has taken possession of said road and placed it in the hands of a Receiver, who is operating the road in Mississippi and Alabama.  For various reasons he cannot operate it in Tennessee and Georgia.  The income from the present operations will not pay the working expenses.  The company owes Alabama $700,000 00, and will owe it more.  If the State gets all the security property, still she will lose heavily. Part of this road, offices, telegraph wires, etc., are in Georgia. This part has been levied on by attachments and judgments, founded upon foreclosure of liens for labor and material, and

is now advertised for sale. It is rapidly deteriorating, and if sold under present complications it will be sacrificed.

The prayer was for a Receiver, for subpœna against all these parties and creditors, and for injunction against a sale under their jndgments, or further prosecution of their suits, and for relief by paying it first. On the 2d of September, 1871, the defendants were ordered to show cause why the injunction should not be granted.

Some of these creditors answered the bill. The main allegations in it were admitted. They set up that the mortgage was not duly recorded in Georgia; said the property in Georgia was not being wasted or destroyed, but was taken care of by persons appointed by the Governor of Georgia; that the road and the property of the company outside of Georgia was sufficient to pay Alabama's claim, and that their liens for labor and material furnished was of higher dignity than the pretended lien of Alabama, on so much of the road and property as was in Georgia. That there was enough for Alabama out of Georgia, was supported by certain affidavits as to the value of the property in Mississippi, Tennessee and Georgia. And they urged these and various other reasons of like character, set out *in extenso*, as grounds of objection to the issuing of injunction or appointment of a Receiver.

Georgia was no party to the bill; but on the 2d of August, 1871, the Governor of Georgia had issued and published a proclamation in which, after reciting that said company had failed to pay the January and July (1871) interest due on certain of its bonds, indorsed by Georgia, and that Georgia had been compelled to pay said interest, that said company had agreed to the terms upon which said indorsement was made by Georgia, he, by virtue of those terms, as commander of the army and navy of Georgia, proclaimed so much of said road and property as was in Georgia to be in the possession of Georgia, and ordered all the military and naval forces of Georgia to protect the agent of the State in maintaining the said posses-

Noble Brothers *et al. vs.* The State of Alabama.

sion. When the day for hearing this motion for injunction and Receiver arrived, counsel for the State appeared, read said proclamation, made known that E. D. Graham and James C. Nisbet, Esqs., had been, by the Governor of Georgia, appointed as such agents to hold such possession, and were then in possession thereof. What he proposed to do is not stated.

After argument the chancellor ordered the injunction to issue as prayed for, but that it should not restrain or interfere with the sale of said railroad by the Governor of Georgia, according to the laws of Georgia; and he appointed a Receiver to take charge of, preserve and protect said property in Georgia, according to the laws of Georgia applicable to the case. He further ordered the Receiver to negotiate with parties in charge of and controlling other portions of said road for running the same from Meridian, Mississippi, and Chattanooga, Tennessee—its *terminus.* The defendants to the bill assign said orders as errors. Alabama excepted to and assigned as error so much of the order as to injunction as prevented the sale of the property and road in Georgia, by its Governor.

E. D. GRAHAM, D. A. WALKER, WILLIAM H. DABNEY, J. A. W. JOHNSON, E. M. DODSON, J. G. JACKAWAY, for plaintiffs in error; J. W. H. UNDERWOOD, for the State of Georgia.

NISBETS & JACKSON, for Alabama.

WARNER, Judge.

This is a bill filed by the State of Alabama, in the Superior Court of Dade county, against the defendants, who are the creditors of the Alabama and Chattanooga Railroad Company, having numerous and various claims against said company which they are endeavoring tò enforce against the property of said company, in the county of Dade, by every

process (in the language of the complainant's bill) known to the law. The complainant alleges that the State of Alabama is the indorser of the bonds of said company to the amount of several millions of dollars; that the company, owing to the fraudulent conduct of Daniel N. Stanton and John C. Stanton, the one as President and the other as Superintendent of said road, and their associates, in the misapplication of the funds of the company, and mismanagement of its affairs, is utterly insolvent; and that the State of Alabama, the complainant, mnst lose heavily as the indorser of the bonds of said company; that said road is constructed in the States of Mississippi, Alabama, Georgia and Tennessee; that a large portion of the property of said road in the county of Dade, consisting of rolling stock, wood, crossties, fixtures, etc., has been levied on by attachments, and judgments founded upon the foreclosure of liens for labor and material, and is now advertised for sale; that the said property is rapidly deteriorating in value, and will be sacrificed if sold under the present complications, and serious and irremediable injury will be suffered by the complainant. The execucution of the mortgage deed of trust to the State of Alabama, on the road, was acknowledged by the President of the company and Treasurer, in its corporate capacity, before the Clerk of the Superior Court, of Dade county, and recorded in his office on the 1st day of January, 1869. By the Acts of the General Assembly of this State the company was authorized to construct the road through the county of Dade on certain conditions therein explained. The bill prayed, amongst other things, for an injunction to restrain the creditors of the company from selling the property of the road in the county of Dade, and for the appointment of a Receiver to take charge of the same. On the hearing of the motion for the injunction and the appointment of a Receiver, counsel, representing the State of Georgia, (though the State was not a party to the bill) appeared *before the Court and objected to the granting of the injunction, and read to the Court the procla-

Noble Brothers *et al. vs.* The State of Alabama.

mation of the Governor of this State, made in pursuance of the Acts of the General Assembly, passed in 1869 and 1870, granting State aid to this railroad company, and other companies in this State, the Governor having indorsed the bonds of the company to the extent of $8,000 00 per mile. The third section of the Act of 1869 provides, " That in the event any bond so indorsed by the State, as provided in the first section of the Act, or the interest thereon, shall not be paid by said railroad company, at maturity, it shall be the duty of the Governor, upon information thereof, to seize and take possession of all the property of said railroad company, and apply the earnings thereof to the extinguishment of said unpaid bonds and the interest on the same, and upon continued default for the period of six months, he may sell said property in such manner as may best subserve the interest of all concerned." The proclamation of the Governor is dated the 2d of August, 1871, and recites that the company has failed to pay the semi-annual interest due on the indorsed bonds on the 1st days of January and July, and ordered a seizure of the road and all its property of every description lying or being in this State, and placed the same in the possession of Messrs. Nisbet & Graham, as agents for the State. The Court granted the following order :

" Ordered by the Court that the State's writ of injunction issue in accordance with the prayer of complainant's bill, but that said injunction shall not restrain or interfere with the sale of said railroad by the Governor of Georgia, according to the laws of said State. It is further ordered, that William T. Wofford, of the county of Bartow, in this State, be and he is hereby appointed Receiver in said case, to take charge of and preserve and protect the property of the said Alabama and Chattanooga Railroad Company, in accordance with the law of this State applicable to this case. The Receiver appointed in this case so soon as he is qualified as required by the order of appointment, is directed to take into his custody and safe keeping that portion of the Alabama

and Chattanooga Railroad situated in the State of Georgia, and all the property of the Alabama and Chattanooga Railroad Company now in said State of Georgia of every kind and description whatsoever; and it is further ordered, that said Receiver negotiate with the parties in charge of and controlling other portions of said Alabama and Chattanooga Railroad situated in other States, for the running of said road through its entire length, from Meridian to Chattanooga."

Whereupon the defendants, by their counsel, excepted.

It appears from the complainant's bill that this is a continuous line of railroad from Meridian, in the State of Mississippi, to Chattanooga, in the State of Tennessee. In our judgment, the allegations in the complainant's bill make a proper case for an injunction to restrain the sale of that portion of the road being in this State, and the property of the company appertaining thereto in this State by the judgment creditors who have levied on the same in satisfaction of their numerous conflicting liens, so as to prevent a multiplicity of suits, and to prevent irreparable injury and damage to the respective indorsers of the bonds of the company, both in regard to the State of Alabama, and the State of Georgia, as well as the other creditors of the company in this State. When the road is sold it will be best for all the creditors of this insolvent company, that it should be sold together, with its equipments, as an entire road, and not in detached parts, and in the meantime the road should be run and kept in operation throughout its entire length, for the benefit of all concerned, so that when it shall be sold it may bring its full market value. We therefore affirm the judgment of the Court below in granting the injunction and appointing a Receiver, with the instructions given to said Receiver, with this additional instruction, " that said Receiver negotiate with the Governor of Georgia in regard to the possession and running of the road through this State," as well as with the .other parties in charge of and controlling other portions of

said road situated in other States, for the running of said road through its entire length, from Meridian to Chattanooga.

Let the judgment of the Court below and the instructions to the Receiver be affirmed, and the Court below is directed to give to the Receiver the additional instruction, as herein specified.